UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KAREN LAWRENCE-WEBSTER,

        Plaintiff,                             Case Number 05-10047-BC
                                                           Honorable Thomas L. Ludington

v.

CITY OF SAGINAW, CECIL COLLINS,
DEBORAH KIMBLE,

        Defendants.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART
DEFENDANT CITY OF SAGINAW AND DEFENDANT KIMBLE'S
AND DEFENDANT COLLINS' MOTIONS FOR SUMMARY JUDGMENT
AND DISMISSING COUNTS I AND II AS TO DEFENDANT COLLINS ONLY
AND COUNTS III-V OF PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE**

On December 12, 2005, Plaintiff Karen Lawrence-Webster filed an amended complaint alleging a variety of claims against her former employer and supervisors: Defendant City of Saginaw ("City"); Defendant Deborah Kimble, the city manager until on or about August 7, 2004; and Defendant Cecil Collins, the deputy city manager who became the interim city manager in mid-August 2004, after the termination of Defendant Kimble.

Plaintiff, the treasurer and financial director for Defendant City, alleges (1) that Defendant City and Defendant Collins violated her rights under the Fourteenth Amendment, including the due process and equal protection clauses, under 42 U.S.C. §§ 1983 & 1985(3), when her employment was terminated without the pre- and post-termination process proscribed by the city charter and its employee handbook; (2) that Defendant City and Defendant Collins retaliated against her for her exercise of her First Amendment rights when her employment was terminated as a result of

comments she made before the city council regarding the state of Defendant City's finances; (3) that Defendant City and Defendant Collins discriminated based on gender under the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq*., when Defendant Collins dealt directly with other employees but indirectly with Plaintiff; and (4) that Defendant Collins and Defendant Kimble committed the tort of false light invasion of privacy by making negative statements about Plaintiff's performance of her job responsibilities to the local newspaper.

On December 20, 2006, the Court held a hearing on three motions for summary judgment under Federal Rule of Civil Procedure 56(c), filed by Plaintiff, by Defendant City and Defendant Kimble, and by Defendant Collins.  In addition, Defendant Collins requested dismissal under Federal Rule of Civil Procedure 12(b)(6) based on qualified immunity.

Regarding Plaintiff's equal protection claim under the Fourteenth Amendment in count I, Plaintiff does not identify herself within a protected class but asserts her membership in a class of one, a class singled out for irrational and arbitrary government behavior.  The Supreme Court has recognized the possibility of an "equal protection claim[] brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Willowbrook v. Olech*, 528 U.S. 562, 564 (2005) (citations omitted).  The Fourteenth Amendment equal protection clause aims to protect against "intentional and arbitrary discrimination," particularly by government agents acting improperly.  *See id*. (citation omitted).  "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negativing every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will."  *Warren v. City of Athens*, 411 F.3d 697,

711 (6th Cir. 2005) (citations omitted); *see also Ross v. Duggan*, 402 F.3d 575, 587 (6th Cir. 2004) (noting that a plaintiff bears the burden of showing that government action "did not rationally further any conceivable public purpose").

Here, Plaintiff has not attempted to negate all possible explanations for her termination or the so-called harassment (e.g., allegedly sending e-mail directly to other employees while only sending e-mail to her with other recipients). Nor has she attempted to show that her termination was intentionally different from the treatment of others similarly situated. Nothing in her pleadings or responsive filings clarifies who would be similarly situated or how her treatment differed. Plaintiff, as the party opposing two motions for summary judgment, has failed to designate specific facts in affidavits, depositions, or other factual material to show evidence on which a jury could reasonably find for her. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Accordingly, Plaintiff has not demonstrated a minimal showing of a violation of her equal protection rights.

Plaintiff also claims that her employment was eliminated without due process in violation of the Fourteenth Amendment. The Fourteenth Amendment prohibits the government from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" Federal courts have recognized that state civil servants may have a property interest in continued employment under certain circumstances and must be afforded due process before being discharged. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1986); *Relford v. Lexington-Fayette Urban County Government*, 390 F.3d 452, 460 (6th Cir. 2004) (stating that "[u]nder state law, government and civil service employees may have a property right in their continued employment"). The due process analysis in continued employment cases is twofold. First, a court must initially determine whether a protected property interest exists; absent an interest, no right to process is present. *Singfield v.*

*Akron Metropolitan Housing Authority*, 389 F.3d 555, 565 (6th Cir. 2004).  Second, assuming that the first step is answered in the affirmative, the court must consider what process is due.  *Id*; *see also Johnston-Taylor v. Gannon,* 907 F.2d 1577, 1581 (6th Cir. 1990).

Defendant City has expressly provided, in its charter, for a review board to consider complaints regarding adverse employment actions.  *See* SCC, § 40.  The board is comprised of three members, one appointed by the city manager, one appointed by the mayor, and one appointed by the two other members.  SCC, § 38.  The board has the responsibility to investigate complaints and make recommendations to the city manager.  SCC, § 40.  In addition, section V.A.1 of Defendant City's employee handbook provides for a written recommendation prior to discharge that is forwarded to the city attorney and the employee services office.  Also, section VI.B of the employee handbook provides for a post-termination process of review before the personnel advisory board, including a public hearing.  Plaintiff has offered evidence that those procedures went unmet.  Although the review board is "advisory" and the city manager retains the final authority to terminate employees,[1] regardless of the recommendation of the board, nothing in the charter or the handbook suggests that it is dispensible at the unilateral election of the city manager.  The city charter and handbook expressly provide for the review board, and Plaintiff has presented evidence that the process described in the charter was not afforded to her.  Thus, Plaintiff withstands the motions for summary judgment as to any claim of a violation of due process.

The central element that Plaintiff must demonstrate to support her claim, for retaliation for her exercise of her rights under the First Amendment in count II, is that she "engaged in

---

[1]*See also* SCC, § 29 (giving the city manager the authority to appoint and terminate employees).

constitutionally protected speech or conduct," because she has offered evidence that her termination would deter a person of ordinary firmness from continuing to provide information regarding the city budget to the city council and that her termination was motivated at least in part by her protected conduct. *See Scarborough v. Morgan County Bd. of Educ.*, 2006 U.S. App. Lexis 28941, *7 (6th Cir. 2006) (citation omitted). State employees do not enjoy unfettered speech rights, *see Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003); however, public employee speech may be protected if the speech pertains to a matter of public concern and if the balancing test of *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), shows that an employee's free speech rights outweigh the interests of the government as an employer. *See Rose v. Stephens*, 291 F.3d 917, 920 (6th Cir. 2002) (citation and internal quotations omitted).

Additionally, the Supreme Court has recognized the importance of loyalty within a democratically elected government and, thus, permitted an exception to the general bar on terminating employees for publicizing their concerns – if the employee is in a policymaking position. *See Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *see also Rose*, 291 F.3d at 921 (stating that "where a confidential or policymaking public employee is discharged on the basis of speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law"); *Latham v. Ohio Attorney General*, 395 F.3d 261, 266 (6th Cir. 2005) (describing as "insubordination" an employee's contradiction of an employer's position on job-related issues, where the employee's position required loyalty). Notwithstanding that exception, public employee speech made pursuant to official duties, rather than as private citizens, does not receive First Amendment protection. *See Garcetti v. Ceballos*, ___ U.S. ___; 126 S.Ct. 1951, 1960 (2006).

Here, Plaintiff alleges that, on August 16, 2004, Defendant Collins presented tax and budget information to the city council. Plaintiff alleges that she attended the public meeting, but not as an officially invited presenter. She did contradict information furnished by Defendant Collins. According to her, she attended the meeting after a third party noted that Defendant Collins would be presenting finance information. The city council allegedly then directed Plaintiff and Defendant Collins to work together to provide an update on the city's financial status for the next meeting on the following Monday, August 23, 2004, because of the discrepancy in the information. Plaintiff explained that on August 18, 2004, Defendant Collins e-mailed her to direct the compilation of certain financial information by August 20, 2004. Plaintiff maintains that, at about 4:30 p.m. on August 20, 2004, Defendant Collins requested a meeting at 5 p.m. to discuss those results, which she states that she had not yet been able to prepare. Plaintiff asserts that she did not attend that meeting and that the next day, a Saturday, she could not gain access to the computer system because Defendant Collins allegedly had directed that she be denied access. On August 23, 2004, Plaintiff believed that Defendant Collins terminated her employment. As a result, she then did not attend the city council meeting that evening. In a letter of August 25, 2004, Defendant Collins acknowledges that he terminated Plaintiff as treasurer and finance director.

The city charter assigns the finance director unique responsibilities. The finance director answers to the city manager, who has the discretion to appoint and retain her without the interference of the city council. *See* Saginaw City Charter, §§ 29-31 (Jan. 6, 1936, with later amendments) ("SCC"). Yet the charter also expressly requires her to prepare the city budget and, after review by the city manager, present it to the city council, presumably to maintain an independent perspective for the council on budgetary and fiscal matters. *See* SCC, § 43.

-6-

Accordingly, the city charter imposes on the finance director responsibilities to both the city manager and to the city council. Because the importance of employer "loyalty" provides the basis for the "policymaker" exception to the bar to adverse actions against employees who exercise their free speech rights, the exception cannot apply to Plaintiff's speech regarding the city budget, where she had a distinct responsibility as the finance director to the city council. Defendant City has not shown that it is entitled to judgment as a matter of law.

Because Defendant Collins has asserted qualified immunity to Plaintiff's federal constitutional claims, Plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *See Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2001) (citation omitted). "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). A court must determine whether a constitutional violation has occurred and, if need be, whether that constitutional right was "clearly established" at the time of the violation. *Id.* at 200-201. Ultimately, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 203.

Although the Court has concluded that Plaintiff may proceed against Defendant City as to counts I and II, Plaintiff has failed to demonstrate that any constitutional violation was "clearly established." Only upon a close reading of the rights and responsibilities allocated by the city charter are constitutional issues apparent. Neither Plaintiff's filings nor statements at the hearing readily demonstrated how the relevant provisions of the city charter would have made "clear to a reasonable [official] that his conduct was unlawful." Accordingly, the Court cannot conclude that

the constitutional violations at issue were clearly established, sufficient for Defendant Collins as an executive official to avoid a constitutional violation.  Thus, Defendant Collins is entitled to qualified immunity as to the federal constitutional claims.

Regarding Plaintiff's claim of gender discrimination under ELCRA in count III, Plaintiff acknowledges that she does not have direct evidence of gender discrimination, because she stated in her deposition that she had no experience of Defendant Collins making any negative comment about her as a women or about women in general.  Consequently, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to this indirect evidence case. *Sniecinski v. Blue Cross & Blue Shield*, 666 N.W.2d 186,193 (Mich. 2003).  An indirect evidence case requires that a plaintiff must first establish a prima facie case of discrimination: "that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) her failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination." *Id*. at 193 (citations omitted).  Then the burden shifts to the defendant to state a legitimate, non-discriminatory reason for its employment action. *Id*. (citations omitted).  Finally, the burden returns to the plaintiff to show that the proffered reason is mere pretext for discrimination. *Id*. (citations omitted).

Here, Plaintiff has offered no evidence that "her failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination."  Plaintiff advances no meaningful connection between her gender and the adverse employment action of her termination. In her deposition, Plaintiff maintains that Defendant Collins' allegedly derisive and dismissive approach in dealing with employees and tendency to circumvent her by speaking directly with those she supervised disrupted her management approach.  Plaintiff maintains that she requested

-8-

Defendant Kimble to take corrective action and that Defendant Collins had e-mailed an evaluation of Plaintiff's work performance to other employees. She also claims that she experienced harassment when Defendant Collins dealt directly with other employees but less directly with her.

Although Plaintiff was terminated under unusual and politically charged circumstances, she has not demonstrated any connection to her gender. Thus, Plaintiff has not made out a prima facie case of gender discrimination. Additionally, she has not offered a basis on which the Court might conclude that Defendant Collins' apparently legitimate and non-discriminatory reasons for her termination, such as a failure to collect property taxes or to complete bank transfers so as to avoid overdrafts, were a pretext for gender discrimination. Thus, summary judgment is granted for Defendant City and Defendant Collins as to count III of gender discrimination under ELCRA.

Regarding count IV against Defendant Collins and count V against Defendant Kimble for false light invasion of privacy, both defendants have immunity under Mich. Comp. Laws § 691.1407(5). The statute provides absolute immunity to the "highest appointive executive official" for actions within the scope of his or her authority. The position of city manager is appointed under the city charter, and under that charter, it is the highest appointed position. *See* SCC, §§ 29 & 30.

Here, both defendants allegedly responded to inquiries from the local newspaper regarding emerging issues within city government, so any communications would fall within the scope of authority of a city manager to communicate on behalf of the city. Although Plaintiff asserted during the hearing that Defendant Kimble made any communications to the newspaper after city council terminated her, thus eliminating any immunity, Plaintiff has not offered any record support to indicate of the timing of Defendant Kimble's alleged disclosures. Indeed, the limited record support offered by Plaintiff comes in the form of a reference in Plaintiff's response brief to Defendant

-9-

Kimble's brief in support of her motion for summary judgment; that second brief then relies upon Defendant Kimble's statement in her deposition that she communicated with the newspaper prior to her termination. Yet a party opposing summary judgment may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Moreover, a party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. Without any such showing as to the timing of Defendant Kimble's purported communications relative to her termination, Defendant Kimble and Defendant Collins receive the absolute immunity of Mich. Comp. Laws § 691.1407(5). Accordingly, count IV as to Defendant Collins and count V as to Defendant Kimble are **DISMISSED WITH PREJUDICE**.

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment [dkt #54] is **DENIED**.

It is further **ORDERED** that Defendant City and Defendant Kimble's motion for summary judgment [dkt #57] is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that Defendant Collins' motion for summary judgment [dkt #56] is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that counts I and II as to Defendant Collins only and counts III, IV, and V are **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 22, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 22, 2006.

                        s/Tracy A. Jacobs
                        TRACY A. JACOBS