UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KAREN LAWRENCE-WEBSTER,

        Plaintiff,

v.

        Case Number 05-10047-BC
        Honorable Thomas L. Ludington

CITY OF SAGINAW,

        Defendant.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR RECONSIDERATION AND DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION FOR RECONSIDERATION

Plaintiff Karen Lawrence-Webster, formerly the treasurer and financial director for Defendant City of Saginaw, filed a complaint against Defendant and her former supervisors.[1] Plaintiff has pursued a variety of claims under 42 U.S.C. § 1983, including alleged violations of the First Amendment and of the Due Process Clause of the Fourteenth Amendment.

The Court previously addressed the parties' motions for summary judgment, dismissing Plaintiff's former supervisors as defendants but permitting Plaintiff to continue to pursue claims of First Amendment retaliation and a violation of due process against Defendant. Defendant filed a motion for reconsideration, and the Court held a hearing on that motion, as well as Plaintiff's motion to strike that motion, on April 24, 2007.

---

[1] Specifically, these supervisors were Deborah Kimble, the city manager until on or about August 7, 2004, and Cecil Collins, the deputy city manager who became the interim city manager in mid-August 2004, after the termination of Kimble.

I.

The Saginaw City Charter § 42 (eff. Jan. 6, 1936, as amended through Jan. 19, 1989) (SCC),[2] provides for a city finance director who "shall have charge of the administration of the financial affairs of the city, including supervision of the offices of assessor and treasurer." SCC § 43 requires the finance director to prepare a budget and submit directly it to the city council after review by the city manager.

The city charter, however, further provides that the city manager has the authority to appoint and remove officers, including the finance director and treasurer. SCC §§ 29 & 31. SCC § 29 further provides that "[a]ll appointments shall be without definite term . . . ." Additionally, the city charter expressly bars the city council from interfering in appointments or removals:

> Neither the council nor any of its committees or members shall direct or request the appointment of any person to or his removal from office or employment by the manager or any of his subordinates. Except for the purpose of inquiry, *the council and its members shall deal with the administrative service solely through the manager, and neither the council nor any member thereof shall give order to any subordinate of the manager either publicly or privately.* Any violation of the provisions of this section by a councilman shall be a misdemeanor, conviction of which shall constitute immediate forfeiture of his office.

SCC § 30 (emphasis added).

August 2004 was a turbulent time for Saginaw municipal governance. On August 7, 2004, the city council terminated Kimble as the city manager, and on either August 23, 2004 or August 25, 2004, the interim city manager terminated Plaintiff as the treasurer and finance director. Between those two events, the city council also met on August 16, 2004. At that meeting, many city residents expressed their opinions on then-unfolding events, some city council members attempted

---

[2][Dkt #73-1].

to invite Kimble to return, and Kimble refused to do so, via letter.

Plaintiff described her decision to attend that meeting, after a television company employee informed her that Collins would present on allegedly "delinquent" taxes, as follows:

> Then I came not as a presenter. I wasn't scheduled to present that night, but since he put together this information, hadn't shared it with me in advance, and when an employee tipped me off that he was going to present this information, once he presented it the Mayor or somebody asked for me to come forward and kind of like give my side of the story or whatever, that's when I told them that the numbers were grossly in error.

Lawrence-Webster Dep., p. 131 [dkt #72-1 - 72-5]. Plaintiff agreed that Collins presented a chart that he purported showed unpaid revenues, a chart with figures that Plaintiff ultimately stated had no integrity, a fact that she claimed Collins knew. *Id*. at p. 277. According to Plaintiff, when the city council then directed her to respond to Collins' presentation at the next meeting (on August 23, 2004),[3] she felt that "they didn't give clear direction, but they wanted me to give them an update of the status of the City, financial status of the City." *Id*. at p. 132. She also believed that she was to speak to them on a "budget issue." *Id*. at 440.

Defendant points out that the city council meeting minutes record that Plaintiff spoke during the "Remarks of Council" section of the meeting, rather than during the "Personal Appearances" section. City Council Meeting Minutes, Aug. 16, 2004, pp. 317, 323, 324. The minutes state the following:

> Councilman Soza asked the City Attorney, Thomas Fancher, and Interim City Manager *if comment from the Finance Director would be appropriate.* Mr. Fancher

---

[3]Plaintiff states later in her deposition that the mayor, not city council, directed her to provide financial information for the next city council meeting on August 23, 2004. *Id*. at pp. 290-291. Any distinction between the mayor and the city council under Defendant's municipal structure does not appear to alter to the relevant distinction, i.e., the difference between the city council and the city's permanent administrators, such as Collins.

-3-

> indicated there would be no prohibition under the Charter to do so *if the Council wants it to happen.* After discussion and comment from Councilpersons Browning, Haynes and Cottrell, [Plaintiff], Finance Director, responded to information proposed by Mr. Collins.

*Id.* at p. 324 (emphasis added).

After this meeting, Plaintiff and Collins had little success in working together to build a presentation for the next city council meeting on August 24, 2004. Plaintiff alleges that, on August 23, 2004, Collins terminated her employment for Defendant; a letter of August 25, 2004 states that Plaintiff was terminated.

Based on its city charter and employee handbook, Defendant had an obligation to provide Plaintiff with a post-termination review by the city's Personnel Advisory Board. *See* SCC § 40; Employee Handbook, § VI.B. Plaintiff maintains that she timely requested this review but that she never received a hearing before the board:

> We requested a hearing. We were advised that the Board was not in existence. There weren't any members who populated the Board. And to my understanding the Board didn't get populated for months after that.

Lawrence-Webster Dep., p. 448. Correspondence between the parties' counsel, spanning from September 3, 2004 to October 13, 2004, shows the parties attempting to work toward having a hearing, although Defendant acknowledges difficulty in establishing the members of the board. Dft. Rs. to Pl. Mot. Sum. Jgmt., Ex. F [dkt #62-7]. At Defendant's request, in consideration for the belief that a settlement offer would be extended shortly, Plaintiff waived the time requirements for convening the board. *Id.* Four months later, on February 9, 2005, Plaintiff filed suit.

II.

Relying on E.D. Mich. LR 7.1(g), Defendant seeks reconsideration of this Court's order of December 22, 2006, denying, in part, Defendant's motion for summary judgment as to Plaintiff's claims of First Amendment retaliation and violation of due process. Regarding her claim of First Amendment retaliation, Defendant focuses its challenge on Plaintiff's speech before the city council on August 16, 2004. Defendant maintains that the Court has been mislead as to the facts and failed to properly apply *Garcetti v. Ceballos*, ___ U.S. ___; 126 S.Ct. 1951, 1960 (2006).

A claim of First Amendment retaliation requires a showing that "(1) [the plaintiff] engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by [her] protected conduct." *Scarborough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citation omitted).

A public employer cannot retaliate against an employee for the expression of protected speech. *See Connick v. Meyers*, 461 U.S. 138, 142 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968). A court must first consider whether an employee's speech "may be fairly characterized as constituting speech on a matter of public concern." *Rose v. Stephens*, 291 F.3d 917, 920 (6th Cir. 2002) (citation and internal quotations omitted). A matter of public concern includes "any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. Internal quarrels about personnel and performance do not reach a level of public concern and, so, receive no First Amendment protection. *Rodgers v. Banks*, 344 F.3d 587, 597 (6th Cir. 2003). Notably, "[p]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance

with the law . . . [and in] seeing that public funds are not purloined." *Mahronic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986).

If the speech at issue does involve a matter of public concern, then a court must apply the balancing test of *Pickering* "to determine if the employee's free speech interests outweigh the efficiency interests of the government as an employer." *Jackson v. Leighton*, 168 F.3d 903, 911 (6th Cir. 1999) (citation omitted). "While public employees may not be required to sacrifice their First Amendment speech rights in order to obtain or continue their employment, . . . a state is afforded greater leeway to control speech that threatens to undermine the state's ability to perform its legitimate functions." *Rodgers*, 344 F.3d at 596(citations omitted).

Most recently, the Supreme Court has held that public employees who make a statement pursuant to their official duties are not engaging in protected speech and, so, remain susceptible to employer discipline for any such statements. *Garcetti v. Ceballos*, ___ U.S. ___; 126 S.Ct. 1951, 1960 (2006). The Court stated, "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id*. The Court also noted "the potential societal value of employee speech" and reiterated that "employees retain the prospect of constitutional protection for their contributions to the civic discourse." *Id*. In *Garcetti*, a deputy district attorney's supervisors proceeded with a prosecution, despite his recommendation to the contrary, and he suffered adverse employment consequences after he was testified on behalf of the defense. The Court concluded that the attorney's daily professional activities were not the speech of a citizen but the communications of a government official with official consequences. *See also Haynes v. City of Circleville*, 474 F.3d 357, 363-365 (6th Cir. 2007) (holding that a police officer's opposition to changes in canine training

procedure in the course of his official duties was not constitutionally protected speech, under *Garcetti*).

Here, the Court cannot conclude that Plaintiff spoke at the city council meeting pursuant to her official duties. She attended the meeting, according to her deposition, on her own initiative. No evidence suggests that her supervisor, Collins, directed her attendance or even approved of her attendance. The city council minutes do reflect that she spoke at the request of the council, after the section of the meeting reserved for private citizens. Indeed, as Defendant emphasizes, Plaintiff's obligation to provide the council with any budgetary information had already concluded with the end of the fiscal year, some months earlier. Plaintiff's speech at that meeting, even under Defendant's view of the circumstance, was not pursuant to that obligation.

The city charter lodges the sole discretion to appoint and remove the finance director in the city manager. SCC §§ 29, 31. Indeed, the charter expressly bars the council from interfering in the employment relationship between the city manager and the finance director: "Except for the purpose of inquiry, the council and its members shall deal with the administrative service *solely* through the manager, and neither the council nor any member thereof shall give order to any subordinate of the manager either publicly or privately." *Id*. at § 30 (emphasis added). A municipal government can only act through its agents, but the instant city charter does not permit exceptions for the city council to direct the activity of the finance director.

Although the city council does represent the city, the charter exempts from the council's authority direct control over these appointive offices and does not grant the council the authority to insert itself in final employment decisions for certain appointive offices. Because the city charter delineates the lines of authority with such care, specifically identifying how those appointive offices

do not answer to the city council, the city manager is the treasurer's and finance director's sole employer.

Because the city manager and not the city council was Plaintiff's employer, her speech – at their solicitation at a meeting she attended on her own initiative – does not fall, in this Court's view, under *Garcetti*. She contributed to civic discourse before the city council and without any directive from her employer, Collins, to do so. She was not speaking pursuant to his direction of her official duties, and, therefore, as a result, Defendant has not demonstrated that Plaintiff's speech is outside the protection of the First Amendment. Consequently, Defendant has not identified a palpable defect by which the Court has been mislead, nor that a correction would result in a different disposition.

### III.

Regarding Plaintiff's claim of a due process violation, Defendant requests reconsideration of this Court's order on a variety of grounds, including the Sixth Circuit's decision in *McClain v. Northwest Community Corrections Center Judicial Corrections Bd.*, 440 F.3d 320 (6th Cir. 2006). There, the Sixth Circuit stated that state law creates property interests in employment only when a plaintiff can invoke "a mutually explicit understanding" or rule that she has an entitlement to an employment benefit. *Id*. at 330. Significantly, "[n]o constitutional entitlement to procedural due process can logically arise when the decision-maker's power is wholly discretionary." *Id*. If a person cannot invoke a mutually explicit understanding at a hearing that she can retain her employment – for example, because she is an at-will employee – then she lacks a federally protected due process interest, even if state law does provide some procedural rights. *Id*.

Here, the city charter expressly states that Plaintiff's employment was within the discretion of the city manager and "without [a] definite term." SCC § 29. Although the city charter and the employee handbook provided for additional process to review employment actions such as terminations, Defendant's counsel correctly insists that a possible review – without any substantive criteria – does not provide any mechanism for overriding the city manager's decision, regardless of the merits of that decision. Under *McClain*, Plaintiff's at-will employment relationship with Defendant does not give rise to federal due process rights, even though procedural protections existed against the loss of employment and were disregarded by Defendant. Collins, the city manager and, so, the decision-maker as provided by the city charter, had the discretionary authority to terminate Plaintiff's employment. Accordingly, Defendant correctly arges that Plaintiff cannot sustain a claim of a violation of due process, because she has not shown a federal due process interest.

Defendant also correctly asserts that even if Plaintiff did have a due process interest on the instant facts, Plaintiff has not shown a violation of Defendant's policy or custom. To pursue a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the alleged constitutional violation occurred pursuant to a policy, custom, or procedure. "[A] municipality . . . cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000) (citation omitted). To establish liability against a governmental entity under § 1983, a plaintiff must show that an unconstitutional action follows from a policy, regulation, or decision officially adopted by that government entity. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978); *see also Scarbrough v. Morgan County Bd. of Education*, 470 F.3d 250, 261 (6th Cir. 2006) (citation omitted). "The Supreme Court has recently emphasized

that . . . a showing [of a constitutional violation resulted from a governmental policy or custom] requires demonstrating a 'direct causal link' between official action and the deprivation of rights, such that the 'deliberate conduct' of the governmental body is the 'moving force' behind the alleged injury." *Waters v. City of Morristown*, 242 F.3d 353, 361-362 (6th Cir. 2001) (citations omitted). Alternatively, a plaintiff can show that a constitutional deprivation occurred pursuant to a "custom" of a governmental entity, even if not formally enacted. *Monell*, 436 U.S. at 690-691. "Only then can the action of the municipality itself . . . be said to have caused the harm," rather than imputing to a government entity the bad acts of individual employees. *Shameizadeh v. Cunigan*, 336 F.3d 535, 556 (6th Cir. 2003) (citation and internal quotations omitted).

Based on its city charter and employee handbook, Defendant did have an obligation to provide Plaintiff with a post-termination review. *See* SCC § 40; Employee Handbook, § VI.B. By setting this obligation out publicly, Defendant set a policy and procedure for itself to follow. Although the policy of providing post-termination reviews – as required by the handbook – would be executed by the individuals who represent the city, only the employer, Defendant, rather than any other person, actually had the responsibility for a post-termination hearing before the Personnel Advisory Board. Thus, the municipal policy is set forth in the city charter and employee handbook.

Yet, the challenged action is not that policy, but a departure from it. An action, such as a failure to comply with the requirements of a policy, does not itself establish a contrary policy. The case law does permit a plaintiff to show a custom of departing from official pronouncements. Yet Plaintiff has only established a single departure from published policy. That action alone does not support pursuing liability against Defendant, a municipality. Accordingly, Plaintiff has not offered evidence to make out an essential element of her claim – municipal liability. Thus, in light of the

-10-

absence of any federally protected due process interest and Plaintiff's failure to make a showing of municipal liability, the Court is satisfied on reconsideration that Defendant has shown a basis on which a different disposition is required.

IV.

Finally, Defendant has requested that this Court certify its order of December 22, 2006 for immediate appeal under 28 U.S.C. § 1292. Section 1292(b) permits a district court to certify an order for interlocutory appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Here, Plaintiff's remaining claim under the First Amendment does involve a controlling question of law, i.e., the application of *Garcetti* to the instant facts.

The Court, however, is not convinced that the city charter affords a *substantial* ground for difference of opinion over whether Plaintiff spoke pursuant to her official duties. Additionally, the Court cannot find that an immediate appeal on Plaintiff's single remaining claim would materially advance the ultimate termination of the litigation, because all that remains of the litigation is to proceed to trial. Consequently, Defendant's request for immediate interlocutory appeal is denied.

V.

Accordingly, it is **ORDERED** that Defendant's motion for reconsideration [dkt #81] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claim of a violation of due process is **DISMISSED WITH PREJUDICE**, but her claim of a violation of 42 U.S.C. § 1983 based on First Amendment retaliation remains.

It is further **ORDERED** that Plaintiff's motion to strike Defendant's motion for reconsideration [dkt #83] is **DENIED** as moot.

It is further **ORDERED** that Defendant's request for immediate interlocutory appeal under 28 U.S.C. § 1292(b) is **DENIED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: May 2, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 2, 2007.

s/Tracy A. Jacobs  
TRACY A. JACOBS